# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-CR-4064-LTS-KEM |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION |
| ROBERT JOSEPH DALE CLINKENBEARD, a/k/a Bobby, | |
| Defendant. | |

Currently pending before the court is Defendant's motion to return property, which the Government partially resists. *See* Docs. 55, 59. I recommend granting the motion in part and denying the motion in part (Doc. 55).

Having been sentenced and proceeding pro se, Defendant Robert Joseph Dale Clinkenbeard filed a second[1] motion for return of property. Doc. 55. Defendant requests a list of the items seized, a list of the items later returned, and the return of an AR-15 rifle to Defendant's brother, William Clinkenbeard. *Id.* The Government responded to the motion. Doc. 59. The response included the Spirit Lake Police Department property receipts listing property seized under the search warrant, as well as property seized for safekeeping from the Defendant's person upon his arrest. Docs. 59-1 to 59-4. The Government also included property receipts listing property released to Defendant's brother and a "Sarah Graves." Docs. 59-5 to 59-7. Defendant filed a reply. Doc. 60.

The Government indicates no objection to the release of the following property to Defendant's brother:

---

[1] The first motion requested "the release of any and all property [seized] that was not directly used in any crime for which [Defendant] ha[s] been charged, including . . . [a] Nexus cell phone, laptop(s), butterfly knife, flash drive(s), electronics, 3D printer, and any other personal property." Doc. 39. The Government did not resist release of the property to Defendant's brother, as requested in the motion. Doc. 41. The court granted the motion. Docs. 42, 44.

- 80% lower receiver;
- Mason jar with white substance;
- Mushroom growing kits;
- Syringe;
- Digital scale;
- Unloaded AR magazines;
- Upper AR-15 barrel;
- Butt stocks;
- AR-15 tripod mount;
- AR-15 forearm mount;
- AR- pistol grip;
- Buffer spring;
- Muzzle break;
- Buffer tube;
- Various AR tools and parts; and
- Nexus Huawei cellphone.

Docs. 59, 59-1, 59-2. The Government does object to returning the following:

- Drug paraphernalia (6 glass pipes);
- Counterfeit bills;
- AR-15, 223 Windham weaponry, serial number CF008564;
- AR magazine loaded with twenty rounds; and
- Plastic baggie with methamphetamine.

*Id*. The Government indicates any remaining seized property listed on the property receipts has already been released to Defendant's designees.

Federal Rule of Criminal Procedure 41(g) provides:

A person aggrieved . . . by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

First, "[t]he movant must establish lawful entitlement to the property." *Jackson v. United States*, 526 F.3d 394, 396 (8th Cir. 2008). "This burden is . . . satisfied by showing that the property was seized from the movant's possession, as a person from whom property is seized is presumed to have a right to its return." *Id.* The burden then

2

shifts to the Government to "establish a legitimate reason to retain the property." *Id.* at 397.

The Government objects to returning drug paraphernalia, counterfeit bills, and the plastic baggie with methamphetamine because these items are contraband. Contraband need not be returned to Defendant. *See id.*

The Government also objects to returning the AR-15 rifle and an AR magazine loaded with twenty rounds. The Government argues that firearms and ammunition cannot be returned to Defendant or his designee because Defendant is a felon who is prohibited from possessing these items. Defendant requests the return of the AR-15 rifle because it purportedly belonged to his deceased brother, Brian Clinkenbeard. Defendant asserts his brother Brian lawfully possessed the firearm, and that his other brother, William, can lawfully possess the firearm. Defendant also indicates he was not indicted nor sentenced for the possession of this rifle.

The Government responds that Defendant's claims regarding the ownership of the rifle are not credible. The Government notes that on June 25, 2018, Defendant attempted to sell the AR-15 firearm to a confidential source working with law enforcement. The Government also notes Brian Clinkenbeard never came forward to claim the rifle (as noted, Defendant's brother, Brian Clinkenbeard, is now deceased).

In reply, Defendant indicates he is "willing to accept the lower receiver of the AR-15 cannot be provided to anyone on [his] behalf," but he requests that the firearm be disassembled and that the "skeletal butt [and] grip, the 'dragon's breath' railing, the scope, mesh-shell catcher, extended barrel, [and] flash-compressor" be returned to his designee. Doc. 60. He also argues that "it does not require an expert to remove the bullets from the clip in order to return the clip." *Id.* Defendant also indicates that he would like the return of the black case used to transport the firearm, which is not listed on the property receipt. *Id.*

In *Henderson v. United States*, 575 U.S. 622, 625 (2015), the Supreme Court held that the felon-in-possession statute did not "categorically prohibit[] a court from

approving a convicted felon's request to transfer his firearms to another person." In that case, the defendant had lawfully owned the firearms at issue prior to his conviction. *Id.* at 624. The defendant requested the release of his firearms to "a friend who had agreed to purchase them for an unspecified price." *Id.* The Court held that such a transfer would not necessarily amount to the defendant's constructive possession of the firearms, as the government argued. *Id.* at 630-31. The Court held a court could "approve the transfer of guns consistently with [the felon-in-possession statute] if, but only if, that disposition prevents the felon from later exercising control over those weapons, so that he could either use them or tell someone else how to do so." *Id.* at 630. The Court noted:

> One way to ensure that result . . . is to order that the guns be turned over to a firearms dealer, himself independent of the felon's control, for subsequent sale on the open market. . . . That option, however, is not the only one available under [the felon-in-possession statute]. A court may also grant a felon's request to transfer his guns to a person who expects to maintain custody of them, so long as the recipient will not allow the felon to exert any influence over their use. In considering such a motion, the court may properly seek certain assurances: for example, it may ask the proposed transferee to promise to keep the guns away from the felon, and to acknowledge that allowing him to use them would aid and abet a [violation of the felon-in-possession statute]. Even such a pledge, of course, might fail to provide an adequate safeguard, and a court should then disapprove the transfer. See, *e.g., State v. Fadness*, 268 P.3d 17, 30 (Mont. 2012) (upholding a trial court's finding that the assurances given by a felon's parents were not credible). But when a court is satisfied that a felon will not retain control over his guns, [the felon-in-possession statute] does not apply, and the court has equitable power to accommodate the felon's request.

*Id.* at 630-31 (citations omitted).

Unlike this case, *Henderson* involved a defendant who had lawfully possessed firearms at the time they were seized and whose "felony conviction had nothing to do with his firearms." *Id.* at 624 & 625 n.1. The Supreme Court noted that "[t]he unclean hands doctrine," which "proscribes equitable relief when . . . an individual's misconduct

4

Case 5:18-cr-04064-LTS-KEM    Document 62    Filed 10/22/21    Page 4 of 7

has 'immediate and necessary relation to the equity that he seeks[,]' . . . . might apply, for example, if a felon requests the return or transfer of property used in furtherance of his offense." *Id.* at 625 n.1.

Here, Defendant pleaded guilty to three counts: possession of a firearm by a felon and a person convicted of domestic violence; distribution of a controlled substance (methamphetamine); and use of a firearm during and in relation to a drug trafficking crime. Docs. 1, 36. His offense conduct involved events that occurred "[o]n or about June 7, 2018," including selling a rifle (a Norinco) to a confidential source. Docs. 1, 25. The complaint and presentence investigation report both set forth additional conduct related to the attempted sale of a second firearm, namely, that on June 25, 2018, law enforcement arrested the defendant pursuant to a warrant after he attempted to sell an AR-15 style rifle (a Windham Weaponry) to the confidential source; afterwards, law enforcement executed the search warrant. Doc. 25; *Clinkenbeard v. United States*, 18-MJ-224-KEM, Doc. 1 (N.D.I.A. June 26, 2018). Law enforcement also seized a case and loaded magazine. *Id.*

Although Clinkenbeard was not charged related to the June 25, 2018 attempted sale, this conduct was described in both the complaint and presentence investigation report. *See id.*; Doc. 1. In addition, as part of his plea agreement, Clinkenbeard admitted as part of the factual basis for his plea that "[o]n or about June 25, 2018, . . . law enforcement arrested defendant as he was attempting to sell another firearm to the [confidential source]." Doc. 14. He also agreed (initialing the paragraph) "to forfeit and abandon any and all claim to items seized by law enforcement from defendant at the time of any arrest or search, including defendant's arrest and the search of defendant's person and residence on or about June 25, 2018." *Id.* He also specifically agreed to forfeit "any and all firearms and ammunition in defendant's care, custody or control during the time period of defendant's illegal conduct." *Id.*

Defendant is not entitled to the return of the AR-15, loaded magazine, and carrying case. First, he agreed to forfeit these items as part of the plea agreement. *Jackson*, 526

5

F.3d at 397 ("A Rule 41(g) motion 'is properly denied if . . . the property is . . . subject to forfeiture . . . .'" (quoting *United States v. Vanhorn*, 296 F.3d 713, 719 (8th Cir. 2002))). Second, these items are "derivative contraband" used in connection with Defendant's offense and subject to the unclean-hands doctrine:

> Derivative contraband is property that may be lawfully possessed but which became forfeitable because of unlawful use." The doctrine of unclean hands is an equitable doctrine that allows a court to withhold equitable relief if such relief would encourage or reward illegal activity.
> . . . [T]he government [may] assert, in resistance to a Rule 41[g] motion, a limited derivative contraband theory, i.e., that the items sought to be returned were in fact utilized or intended to be utilized by the person who possessed them for the manufacture, storage, or transportation of controlled substances. We agree with the district court that it makes scant sense to return to a convicted drug dealer the tainted tools used or intended to be used in his illegal trade when the same were lawfully seized.

*United States v. Felici*, 208 F.3d 667, 670-71 (8th Cir. 2000) (cleaned up) (citations omitted) (quoting *United States v. Eighty-Eight Thousand, Five Hundred Dollars*, 671 F.2d 293, 297 n.8 (8th Cir. 1982)), *abrogated on other grounds by Henderson*, 575 U.S. 622.

Accordingly, I recommend granting Defendant's motion to return property to the extent the Government does not resist. I recommend denying Defendant's motion with respect to drug paraphernalia, counterfeit bills, the Windham weaponry AR-15, the loaded AR magazine, the firearm case, and the plastic baggie with methamphetamine.

I respectfully recommend that the district court **grant** Defendant's motion to return property **in part and deny it in part** (Doc. 55).

Objections to this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b), and Local Criminal Rule 59, must be filed within fourteen days of the service of a copy of this Report and Recommendation; any response to the objections must be filed within seven days after service of the objections. A party asserting such objections must arrange promptly for the transcription of all portions of the record that the district court judge will need to rule

on the objections. LCrR 59. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 22nd day of October, 2021.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa